IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DONNA WERNER,<br><br>         Plaintiff,<br><br>v.<br><br>HOLLAND AMERICA LINE, INC.,<br><br>         Defendant. | Case No. 1:18-cv-00018-TMB<br><br>ORDER ON MOTION FOR TRANSFER OF VENUE (DKT. 9) |

## I. INTRODUCTION

The matter comes before the Court on Defendant Holland America Line, Inc.'s ("Holland America") Motion for Transfer of Venue (the "Motion" or "Motion for Transfer").[1] Holland America requests that the Court transfer this case to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). The Motion is opposed by Plaintiff Donna Werner and has been fully briefed.[2] The parties did not request oral argument, and the Court finds that it would not be helpful. For the reasons stated below, Defendant's Motion for Transfer of Venue is **GRANTED**.

## II. BACKGROUND

This matter concerns a negligence action brought by Plaintiff, a cruise passenger, and the cruise ship line. On or about June 13, 2016, Plaintiff Donna Werner and her husband booked a seven-day cruise aboard Defendant Holland America's M/S Noordam with ports in Seward, Alaska and throughout Southeast Alaska.[3] On September 1, 2016, Plaintiff was a passenger on

---

[1] Dkt. 9 (Motion for Transfer of Venue).

[2] Dkt. 11 (Response in Opposition); Dkt. 15 (Reply).

[3] Dkt. 13 at 2 (Declaration of Donna Werner).

1

Defendant's M/S Noordam Alaskan cruise.[4] On that day, Plaintiff was set to participate in the Tracy Arm Fjord and Glacier Explorer day trip, which included bus transportation to a smaller tour boat.[5] While exiting the bus, Plaintiff claims to have suffered personal injuries due to the negligence of Defendant or Defendant's agents, employees, or servants.[6]

Plaintiff initiated this action in the Superior Court for the State of Alaska on August 23, 2018.[7] She prays the court award her general damages, specific damages for medical expenses and lost wages, and costs. On December 4, 2018, Defendant timely removed to this Court relying on federal diversity jurisdiction under 28 U.S.C. § 1332(a).[8]

Defendant now moves for transfer of venue to the Western District of Washington pursuant to a forum selection clause in the Holland America Line Cruise Contract dated December 8, 2015 ("Cruise Contract"), which states in relevant part:

> (B) Forum and Jurisdiction for Legal Action:
>
> (i) <u>Claims for Injury, Illness or Death</u>:
>
> All claims or disputes involving Emotional Harm, bodily injury, illness to or death of any Guest whatsoever including without limitation those arising out of or relating to this Cruise Contract or Your Cruise, Land + Sea Journey, Land Trip(s), or Air Package shall be litigated in and before the United States District Court for the Western District of Washington at Seattle, or as to those lawsuits over which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in King County, State of Washington, U.S.A., to the exclusion of the courts of any other country, state, city, municipality, county or locale. You consent to

---

[4] Dkt. 1-1 (Complaint) at 2.

[5] *Id.*

[6] *Id.*

[7] Dkt. 1-1 at 3–4.

[8] Dkt. 1.

jurisdiction and waive any objection that may be available to any such action being brought in such courts.[9]

Holland America's Cruise Contracts are not executed on paper, but instead are an online agreement.[10] Passengers who were booked on Plaintiff's cruise must have agreed to the terms of the Cruise Contract as part of their online check-in process.[11] Specifically, passengers were required to scroll through the terms of the Cruise Contract and then must check a box on the webpage, which states "Terms & Conditions have been accepted on behalf of the selected guests."[12] Defendant has submitted a copy of the Cruise Contract as an exhibit in support of its Motion.[13]

Defendant also submitted an "exemplar" of the boarding documents that passengers are required to print before embarking on their cruise ("Express Documents").[14] The physical Express Documents contain a page titled "contract" which confirms passengers (or an agent acting on passengers' behalf) have accepted the Cruise Contract during check-in.[15] The Express Documents

---

[9] Dkt. 9 at 3.

[10] Dkt. 10 at 4 (Declaration of Tiffany G. Bergman).

[11] *Id.*

[12] *Id.* at 4–5; Dkt. 10-5 at 2.

[13] Dkt. 10-2.

[14] Dkt. 10-1. The passenger information on the exemplar differs from that which the Plaintiff would have received. *Compare Id.* and Dkt. 11 at 10 n.1. For example, instead of the Plaintiff's name listed as "Guest," the exemplar displays "TEST, NOORDAM." *Id.* Defendant asserts, aside from the passenger information, the remainder of the exemplar contains the standard terms and conditions given to customers. *Id.*

[15] Dkt. 10-1 at 8.

also redirect passengers' attention to certain sections of the online Cruise Contract, specifically, Section 15 that contains the forum section clause.[16]

Plaintiff opposes the Motion on several grounds. First, Plaintiff challenges the accuracy of the contractual terms due to "a lack of confidence in the exemplar" provided by Defendant.[17] Second, Plaintiff contends that the Cruise Contract, which she describes as an "internet adhesion contract," was not legally formed, and that therefore its provisions are not binding.[18] Third, Plaintiff suggests that even if the Cruise Contract was factually and legally formed, it should not be enforced because it is unfair.[19] The Defendant's Motion has been fully briefed and is now ripe for resolution.[20]

### III. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought or to any district or division to which all parties have consented." Generally, a motion for transfer of venue under § 1404(a) requires a court to balance multiple factors in its determination whether transfer is appropriate in a particular case.[21] The Ninth Circuit has identified

---

[16] *Id.*

[17] Dkt. 11 (Response in Opposition to Motion for Transfer) at 10.

[18] Dkt. 11 at 5.

[19] Dkt. 11 at 14. Specifically, Plaintiff argues that the Cruise Contract is an "electronic adhesion contract with unfair results in application, and in Defendant's conduct with relation thereto." *Id.* The Court construes this assertion as a challenge to the fundamental fairness of the forum selection clause.

[20] Dkt. 9; Dkt. 11; and Dkt. 15.

[21] *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62–63. (2013).

the following relevant factors that courts may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."[22]

However, the Supreme Court instructs that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."[23] In such case, a plaintiff's subsequent choice of forum is given no weight and a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum."[24] Only "extraordinary circumstances unrelated to the convenience of the parties" will justify denying a motion to enforce a forum selection clause.[25]

In cases where parties have agreed upon a forum selection clause, the nonmoving party "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."[26] Specifically, the nonmovant must "clearly show that enforcement would be unreasonable and unjust."[27] Enforcement is unreasonable and unjust if the clause was "the product

---

[22] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

[23] *Atl. Marine Const. Co.*, 571 U.S. at 62.

[24] *Id.* at 64.

[25] *Id. See also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018).

[26] *Id.* at 64.

[27] *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972).

of fraud or overreaching;" if enforcing the clause would "effectively [deprive the nonmovant] of his day in court;" or if "enforcement would contravene a strong public policy of the forum in which the suit was brought."[28]

## IV. ANALYSIS

Holland America moves to transfer this case to the Western District of Washington, under 28 U.S.C. § 1404(a), pursuant to a forum selection clause contained in the Cruise Contract.[29] Plaintiff advances three arguments for why the Court should deny transfer:[30] (1) the content of the Plaintiffs Cruise Contract is not adequately proven by the exemplar documents provided by Defendant,[31] (2) even if they were, the Cruise Contract was not legally formed contract and its terms are not controlling here,[32] and (3) enforcing the forum selection clause would violate principles of fairness.[33] Defendant, in reply, counters all three arguments.[34] The Court considers each of these contentions in turn.

---

[28] *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (*en banc*) (quoting *M/S Bremen*, 407 U.S. at 12–13).

[29] Dkt. 9 at 5.

[30] The Court notes, but does not consider, Plaintiff's additional arguments for estoppel and equitable tolling under the limitation period provisions of the Cruise Contract. *See* Dkt. 11 at 14–17. These requests are irrelevant to the merits of Defendant's Motion for Transfer of Venue.

[31] Dkt. 11 at 10.

[32] Dkt. 11 at 5.

[33] Dkt. 11 at 14.

[34] Dkt. 15.

*A. Whether Defendant has Established the Existence and Terms of the Forum Selection Clause Agreed to by the Plaintiff*

As a threshold matter, the Court must address Plaintiff's indefinite challenge to the existence and accuracy of the contract terms provided by Defendant. For the reasons discussed below, the Court finds that the Defendant has sufficiently established the existence of a forum selection clause, and that the Plaintiff has not created a genuine dispute of fact regarding the terms contained in the Cruise Contract.

Generally, the party moving for a venue transfer bears the burden of establishing the facts showing the proposed transferee forum is more appropriate for the action.[35] However, in the Ninth Circuit this burden shifts where such motion relies on a forum selection clause.[36] If the existence of a valid contract, and the forum selection clause contained therein, is undisputed, the forum selection clause is *prima facie* valid, and the party opposing the clause has the burden to show that the clause should not be enforced.[37]

When such a motion relies on a forum selection clause whose existence is contested, the Court finds, the moving party bears the burden of proving that the clause exists and is binding on the parties.[38] Ultimately, "if the facts asserted by the non-moving party are sufficient to preclude

---

[35] *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); Georgene M. Vairo, *Moore's Federal Practice* § 111.13 (3d Ed. 2010).

[36] *Yei A. Sun*, 901 F.3d at 1087–88 (9th Cir. 2018) (citing *Atl. Marine Const. Co.*, 571 U.S. at 63–4).

[37] *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514–515 (9th Cir. 1988).

[38] There appears to be no federal caselaw on point discussing which party ought to have the burden in proving whether a contract containing a forum selection clause was acceded to by the nonmovant. However, the Court finds that cases concerning arbitration agreements, which place the burden on the proponent, to be highly persuasive. *See e.g., Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2012 WL 32380, at *5 (W.D. Wash. Jan. 3, 2012) (noting that in the case of contractual arbitration provisions, "[t]he party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party.") (citing *Sanford v.*

enforcement of the forum selection clause, the non-moving party is entitled to remain in the forum it chose for suit unless and until the district court has resolved any material factual issues that are in genuine dispute."[39]

Here, Defendant has provided evidence of the existence of a contract between the parties which includes a forum selection clause. Defendant's Motion is accompanied by the declaration of Holland America's Senior Manager of Documentation and Access & Compliance, Tiffany G. Berman, and two exhibits.[40] The first exhibit is an exemplar of the documents Plaintiff received after her online check-in.[41] The second exhibit is a copy of the Cruise Contract.[42] Ms. Berman attests that "[a]ll guests booked on Mr. and Mrs. Werner's cruise were required to complete the online check-in, accept the terms and conditions of the Cruise Contract, and print their boarding

---

*MemberWorks*, Inc., 483 F.3d 956, 961 (9th Cir. 2007)). The Court finds cases assigning burdens in motions to compel arbitration particularly germane in light of *Scherk v. Alberto-Culver Co.*, where the Supreme Court held "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." 417 U.S. 506, 519 (1974). The only state case on the issue aligns with the Court's determination. *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574 (2013), *aff'd*, 478 Mass. 169 (2017) ("The burden is on [movant] to demonstrate that the forum selection and limitations clauses in the TOS were reasonably communicated and accepted.").

[39] *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004). *See also Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that for a summary judgment motion "[the nonmovant] must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").

[40] Dkt. 10.

[41] Dkt. 10 at 2.

[42] Dkt. 10-2.

passes prior to embarking on their cruise."[43] Both exhibits contain a forum selection clause directing actions to the Western District of Washington.[44]

In her response, Plaintiff "challenges the accuracy of the contract terms due to lack of confidence in the exemplar."[45] However, Plaintiff has not made any claim or provided any evidence demonstrating a genuine dispute regarding the existence of the forum selection clause. Plaintiff notes that the exemplar boarding pass provided in Exhibit 1 displays different passenger identifying information than that which would have been found on Plaintiff's boarding pass.[46] Yet, Plaintiff does not dispute that she or her husband "booked" the cruise, nor does she dispute that she or her husband at one point possessed documents "identical or similar" to those presented by Defendant.[47] Nor does Plaintiff identify how the Defendant's exemplars materially differ from the terms accepted by the Plaintiff before her cruise.[48] Plaintiff only expresses a generalized and

---

[43] Dkt. 10 at 4.

[44] Dkt. 10-1 at 8.

[45] Dkt. 11 at 10.

[46] *Id.* n.1 (noting that the mariner ID number, booking/party number, and stateroom information displayed on the Exemplar differ from Plaintiff's actual information).

[47] Dkt. 13 at 2.

[48] Here, the Court notes that the Plaintiff did not clearly state whether she was challenging the Defendant's exemplar as a matter of fact or under the best evidence rule. *See* Dkt. 11 at 10. The Court nevertheless finds that the Cruise Contract and exemplar Express Documents would be admissible if challenged under the rule. Fed. R. Evid. 1001 provides that in the case of electronically stored information—like an online agreement—"original" means any "printout" or "other output readable by sight [ ] if it accurately reflects the information." Thus, the copy of the Cruise Contract may be considered an "original" for purposes of Fed. R. Evid. 1002. The exemplar boarding documents are also admissible. The original physical documents Plaintiff printed along with her boarding pass no longer exist. *See* Dkt. 13 at 2. Fed. R. Evid. 1004 provides, an original is not required to prove the contents of a lost or destroyed document. Therefore, the Court holds that the exemplars provided by the Defendant would be admissible to prove the contents of the agreement between the parties if specifically challenged under this rule.

unsupported doubt regarding the terms of the Cruise Contract. Plaintiff's doubt, without evidence or allegation of an actual difference between Defendant's exhibits and the terms presented to Plaintiff, is not sufficient to create genuine dispute as to the existence of the forum selection clause.

> B. *Whether a Valid Contract was Formed Between the Parties when Plaintiff Accepted the Electronic Cruise Contract Such That the Forum Selection Clause is Binding*

The Court next turns to the issue of whether the Cruise Contract is binding on the parties. In the Ninth Circuit, where parties form a contract that includes a forum selection clause, the clause will presumptively control.[49] The Cruise Contract contains a forum selection clause.[50] Therefore, the question of whether the Plaintiff formed a valid contract by clicking "Accept" on the online Cruise Contract is central to the disposition of the Motion.

It is undisputed by the parties that Alaska law governs the issue of contract formation in this case because the parties are before the Court on diversity jurisdiction.[51] The formation of a valid contract under Alaska law requires "an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."[52] Unlike traditional written contracts, in so-called online "clickwrap" agreements, a user is required to affirmatively click a box on a website "acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website."[53]

---

[49] *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018); *Murphy*, 362 F.3d at 1140.

[50] Dkt. 10-2 at 11.

[51] Dkt. 11 at 9; Dkt. 15 at 9.

[52] *Sea Hawk Seafoods, Inc. v. City of Valdez*, 282 P.3d 359, 364 (Alaska 2012).

[53] *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009). *See also* Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459 (collecting cases from within this Circuit which demonstrate

Alaska courts have not yet addressed the issue of clickwrap agreements; however, such agreements "have been routinely upheld by circuit and district courts."[54] A number of courts within this Circuit have found that clickwrap agreements can comport with the traditional requirements of offer and acceptance.[55] In addressing whether a clickwrap contract is enforceable, courts typically look to whether the particular website in question provided sufficient notice to the user and access to the terms to which the user was expected to agree.[56]

In the present case, Holland America has demonstrated—and Plaintiff does not dispute—that Plaintiff or her husband "had to accept the terms and conditions of the Cruise Contract before completing the online check-in process."[57] Specifically, the website Plaintiff used here requires

---

material differences between "clickwrap" agreements and so-called "browsewrap" agreements in which the user does not see the contract at all but in which the license terms provide that using a website constitutes agreement to a contract whether the user knows it or not).

[54] *Drew*, 259 F.R.D. at 462 n. 22.

[55] *See e.g. Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (noting "[c]ourts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website."); *Savetsky v. Pre–Paid Legal Servs., Inc.*, No. 14–03514 SC, 2015 WL 604767, at *3 (N.D.Cal. Feb. 12, 2015) ("courts generally find that clickwrap agreements are enforceable"); *Beard v. PayPal, Inc.*, No. 09–1339–JO, 2010 WL 654390, at *1 (D.Or. Feb. 19, 2010) (enforcing "clickwrap" agreement where plaintiffs had access to the all terms and conditions on defendant's website and checked box indicating they had read and agreed to it.); *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162 (E.D. Cal. 2003) (holding where plaintiff clicked the click-box on the screen marked, "I agree" on Defendant's website, he expressly agreed to the forum selection clause contained in the terms and conditions).

[56] *Kwan*, 2012 WL 32380, at *8 ("the central issue of concern in Washington in determining whether or not a consumer is bound by an alleged contract is whether the consumer has notice of and access to the terms and conditions of the contract prior to the conduct which allegedly indicates his or her assent."). *Cf. Nguyen*, 763 F.3d at 1176 (declining to enforce a "browsewrap" agreement because, "[u]nlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly…") (citation omitted).

[57] Dkt. 10 at 4.

guests to "scroll down through the [terms and conditions] before they can check a box to indicate that they read the contract."[58] Plaintiff must have also manually select a button stating that the "Terms & Conditions have been accepted on behalf of the selected guests" before completing their check-in.[59] Plaintiff was also required to print out certain documents needed to board the ship, which included a page confirming acceptance of the Cruise Contract, and conspicuously directing passengers' attention the section containing the forum selection clause.[60] Plaintiff does not dispute that she or her husband accepted the Cruise Contract as part of the check-in process, but only asserts that she has no recollection of the facts and circumstances of the booking.[61]

Further, Plaintiff solely relies on *Berkson v. Gogo LLC*[62] to support her argument that she should not be bound by disadvantageous terms in the Cruise Contract. However, the Court finds that even applying the standard in *Berkson* further supports Defendant's argument that the Cruise Contract was validly accepted. In *Berkson*, the terms of an online agreement were not binding because they were contained in a hyperlink that users did not necessarily have to view before accepting.[63] In addition, the *Berkson* court emphasized that "Gogo did not have a practice of emailing or mailing the contents of the 'terms of use' to its customers…Berkson never had a hardcopy in his possession to refer to" and "Gogo did not make an effort to draw Berkson's

---

[58] *Id.*

[59] *Id.*

[60] Dkt. 10 at 1; Dkt. 10-1 at 8.

[61] Dkt. 13 at 2.

[62] 97 F.Supp.3d 359 (E.D.N.Y. 2015)

[63] *Berkson*, 97 F.Supp.3d at 403–4.

12

attention to its 'terms of use.'" [64] Here, as discussed above, Holland America required users to scroll through the terms of the Cruise Contract fully before indicating acceptance.[65] Furthermore, Holland America required users to print out a confirmation of their acceptance to the Cruise Contract making special mention of the forum selection clause.[66] Under these facts, even the *Berkson* standard espoused by Plaintiff that "the offeror must show that a reasonable person in the position of the consumer would have known about what he was assenting to[,]" is satisfied here.

Therefore, the Court finds that Holland America provided Plaintiff ample notice and access to the terms of the Cruise Contract. Moreover, that Plaintiff agreed to the presented terms by affirmatively indicating her acceptance as a required part of the check-in process. Accordingly, Holland America's terms—including the forum selection clause—were unequivocally accepted by Plaintiff and are binding here.

C. *Whether the Forum Selection Provision is Fundamentally Unfair Such That it Should Not Be Enforced*

The enforceability of forum selection clauses is governed by federal law.[67] Under federal law, forum selection clauses are presumptively valid.[68] The Ninth Circuit has instructed that there are three reasons a forum selection clause may be unenforceable: "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the

---

[64] *Id.* at 403.

[65] Dkt. 10 at 4–5.

[66] *Id.* at 2.

[67] *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citing *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir.1988)).

[68] *M/S Bremen*, 407 U.S. at 15 ("Thus, in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.").

clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought."[69] On these elements, Plaintiff—the party seeking non-enforcement—bears a "a heavy burden of proof."[70]

Here, Plaintiff has made no contention that the forum selection clause is invalid under any of these three standards. Plaintiff does not assert that the forum selection clause was the product of fraud. Plaintiff does not argue that the case proceeding in Washington would effectively deny Plaintiff her day in court. And, finally, Plaintiff has not identified any public policy which would be contravened by transferring this action. In fact, Plaintiff declines to "assert that the forum selection clause in the exemplar would be fundamentally unfair *if* a valid contract with that exact clause was formed and now enforceable."[71]

Thus, having found that the Plaintiff's acceptance of the Cruise Contract was binding, and in the absence of any evidence that the forum selection clause is fundamentally unfair, the Court must grant the motion to transfer unless "extraordinary circumstances" counsel against it. Plaintiff has not supplied the Court with any extraordinary reason for which the court should deny Defendant's motion.

---

[69] *Murphy*, 362 F.3d at 1140 (quoting *Richards*, 135 F.3d 1294). *See also Petersen*, 715 F.3d at 280.

[70] *Murphy*, 362 F.3d at 1140 (citing *M/S Bremen*, 407 U.S. at 15).

[71] Dkt. 11 at 11.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Transfer of Venue at docket 9 is **GRANTED**. The Clerk of the Court is directed to transfer the matter to the Western District of Washington.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 3rd day of September, 2019.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE
